IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAMON DICKERSON                        *
      Plaintiff,
   v.                                      *     CIVIL ACTION NO. CCB-11-40

WARDEN                               *
      Defendant.
                                             ***

MEMORANDUM

Damon Dickerson ("Dickerson") filed this complaint while held as a federal detainee at the Maryland Correctional Adjustment Center ("MCAC").[1] The letter complaint, dated December 30, 2010 and received for filing on January 4, 2011, alleged that Dickerson had been detained for twenty-two months and had not received post-surgical care for his left shoulder. Dickerson further claimed that his left knee is injured and requires surgery. ECF No. 1. He stated that he can barely use his shoulder because of the pain and his knee had gotten worse from constant climbing on and jumping off the top bunk in his prison cell.

Although received in letter form, the correspondence was construed as a civil rights action seeking injunctive relief against the medical provider under contract to provide care for federal pre-trial detainees at MCAC. On January 26, 2011, counsel for the health care provider was ordered to file a response to the complaint for injunctive relief, focusing entirely on Dickerson's health care claims.

---

[1] At the time his complaint was filed Dickerson remained detained pending his transfer to a designated Bureau of Prisons ("BOP") facility. On January 7, 2011, he was sentenced to a 188-month term in the BOP, ordered to serve three year of supervised release, and directed to pay a $100.00 assessment. *See United States v. Dickerson*, Criminal No. CCB-09-402 (D. Md.).

On March 11, 2011, counsel for Correctional Medical Services, Inc. ("CMS") filed a show cause response, accompanied by affidavit and medical records. ECF No. 3. Because the response relied on exhibits filed outside the scope of the pleading and substantively responded to Dickerson's medical complaints, on March 22, 2011, the court issued an order which treated the response as a motion for summary judgment and placed Dickerson on notice that he was entitled to file an opposition response with materials in support thereof. ECF No. 4. Notice of the re-characterization was also sent to Dickerson pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975). ECF No. 5. He was granted additional time to file a response and has failed to do so. The court may determine the case without hearing. *See* Local Rule 105.6. (D. Md. 2010).

A detainee's medical claim may sound under the Fourteenth Amendment's Due Process Clause. There is no practical difference, however, between the due process standard and the Eighth Amendment protection standards which measure substantial risk and deliberate indifference for convicted individuals. *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). To establish a claim of this nature Dickerson must satisfy two requirements. First, he must satisfy the "objective" component by illustrating a serious medical need. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If he has proven this first element, Dickerson must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of correctional and medical staff. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less

than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Id*. at 837.

Further, to obtain a preliminary injunction the moving party must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, __, 129 S.Ct. 365, 374 (2008). All four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a standard that allowed the [movant] to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Id.* at 375-76.

The record shows that Dickerson has a history of hypertension, non-insulin dependent diabetes mellitus ("NIDDM"), elevated cholesterol, and gastroesophageal reflux disease ("GERD"). He received an intake evaluation at the Maryland Reception, Diagnostic, and Classification Center ("MRDCC") on August 6, 2009, and did not report any concerns about injuries to his left shoulder or left knee. The next day, August 7, 2009, Dickerson was evaluated by Physician's Assistant Clark. He offered no complaint of pain or injury to his left shoulder or left knee. In addition, Dickerson did not mention his past shoulder surgery during either of his initial evaluations with medical providers at MRDCC. ECF No. 3 at Ex. A.

Between April 29, 2010, and December 27, 2010, Dickerson submitted sick-call encounter

forms for a variety of medical issues concerning constipation, renewal of medications, vegetarian and cardiovascular diets, nighttime snack bags, and trimmers for shaving. He did not submit any sick-call forms complaining of left shoulder or left knee pain. Further, his medical record shows that during the same time period he did not complain of shoulder or knee pain when evaluated by medical staff. *Id*. On December 27, 2010, Dickerson was evaluated by Dr. Ross in the Chronic Care Clinic for his NIDDM. During the appointment he did not complain of pain in the shoulder or knee, nor did he mention his past shoulder surgery.

On February 7, 2010, Dickerson was evaluated by Ross in response to a letter received from Dickerson's attorney, who indicated that a court-ordered evaluation was to occur. During the appointment, Dickerson for the first time told Ross that he had surgery on his left shoulder on March 7, 2009, and that because of his arrest, he had not received any post-surgical treatment. Dickerson complained that his shoulder was sore and also stated that he suffered soreness in his left knee from a torn meniscus. Dickerson claimed that he had submitted sick-call request forms regarding his shoulder and knee, but Ross and the MCAC medical staff could not locate "any documentation" regarding the shoulder or knee in Dickerson's medical chart. *Id*.

Ross's physical evaluation of Dickerson revealed tenderness and decreased range of motion ("ROM") in his left shoulder and knee. Ross observed, however, that Dickerson's gait was normal and he did not appear to be in distress when ambulating. He ordered an x-ray of Dickerson's left shoulder. X-ray results showed normal alignment and no abnormality of the shoulder. Ross determined that no further treatment was medically indicated for Dickerson's shoulder or knee based upon his examination and the x-ray results. ECF No. 3, Ex. A.

4

The submissions have been examined. The court concludes that Dickerson has failed to show that his constitutional right to necessary medical care was violated. His sick-call encounter forms received by medical staff at MCAC did not mention his shoulder surgery or claim that he was experiencing pain in his left shoulder and knee. Once the medical staff became aware of Dickerson's complaint of shoulder and knee pain he received an evaluation from Dr. Ross and diagnostic testing. While Dickerson's ROM in his shoulder and knee was decreased, no abnormalities in his gait were observed and his shoulder x-ray was negative. In the absence of findings of an objective medical condition or injury, deliberate indifference cannot be shown. Dickerson is not entitled to injunctive relief.

Moreover, in any event Dickerson's claim is moot. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). The Federal Bureau of Prisons locator indicates that Dickerson is now confined at the Federal Correctional Institution in Yazoo City, Mississippi.[2] His transfer moots his claims about his medical care at MCAC.

A separate Order follows.


Date: April 20, 2011            /s/
                                           Catherine C. Blake
                                           United States District Judge

---

[2] Dickerson did not inform the court of his new address, as required under local rule. The docket shall be amended to reflect Dickerson's new address.